

## U.S. Department of Justice

*United States Attorney*
*District of Hawaii*

| | |
|---|---|
| *PJKK Federal Building*<br>*300 Ala Moana Blvd., Room 6-100*<br>*Honolulu, Hawaii 96850* | *(808) 541-2850*<br>*FAX (808) 541-2958* |

July 22, 2010

MEMO TO:   Matthew C. Winter (counsel for Christie)
                Assistant Federal Public Defender
                PJKK Federal Building, Room #7-102
                300 Ala Moana Blvd.
                Honolulu, HI 96850
                matthew_winter@fd.org

                Dana S. Ishibashi, Esq. (Counsel for St. Cyr)
                Century Square
                1188 Bishop Street, 36th Floor PH-2
                Honolulu, HI 96813
                ishibashid@aol.com

                Gurmail G. Singh, Esq. (Counsel for Friend)
                700 Bishop Street, Suite 2100
                Honolulu, Hawaii 96813
                gary@garysinghlaw.com

                Harlan Y. Kimura, Esq. (Counsel for Mann)
                Central Pacific Plaza
                220 South King Street, Suite 1660
                Honolulu, HI  96813
                hyk@aloha.net

                Barry D. Edwards, Esq. (Counsel for Turpen)
                P.O. Box 6599
                Kaneohe, Hawaii 96744
                barrydedwards@gmail.com

                Michael J. Park, Esq. (Counsel for Sudbury)
                Union Plaza
                1134 Union Mall, PH 1B
                Honolulu, HI 96813
                mparkatty@hawaii.rr.com

                Richard S. Kawana, Esq. (Counsel for Gibson)
                P.O. Box 240362
                Honolulu, Hawaii 96824-0362
                rskawana@prodigy.net

```
            Louis Michael Ching, Esq. (Counsel for Ignacio)
            4475 Kilauea Avenue
            Honolulu, HI 96816
            louismichaelching@hotmail.com

            Stuart N. Fujioka, Esq. (Counsel for Policicchio)
            1188 Bishop St., Suite 1006
            Honolulu, Hawaii 96813-3304
            stuart@snfaal.com

            Cynthia Kagiwada, Esq. (Counsel for Bouey, III)
            P.O. Box 368
            Kaneohe, HI 96744
            c_kagiwada@hotmail.com

            Clifford B. Hunt, Esq. (Counsel for Shapiro)
            333 Queen Street, Suite 612
            Honolulu, HI 96813
            notguilty007@msn.com

            Todd W. Eddins, Esq. (Counsel for Zeeman)
            1003 Bishop Street, Suite 1320
            Honolulu, HI 96813
            eddins@eddinsdefense.com

            Michael J. Green, Esq. (Counsel for Fiore)
            345 Queen Street, 2nd Floor
            Honolulu, HI 96813
            michaeljgreen@hawaii.rr.com

            Alvin K. Nishimura, Esq. (Counsel for Walsh)
            P.O. Box 4510
            Kaneohe, HI 96744-8510
            aknlaw@hawaiiantel.net



  FROM:     Michael Kawahara
            Assistant U.S. Attorney



  RE:       USA v. Christie, et. al., USDC(Hawaii)
            Criminal Case No. 10-00384 SOM
```

Following up on our prior letter of July 21, 2010, please find attached a copy of the transcript of the now-unsealed hearing on

May 18, 2004 in the <u>Barnes</u> case involving Mr. Christie.

If you have any questions about the foregoing, please contact me at 440-9220.



cc:   Chief U.S. District Judge Susan Oki Mollway (w/att.)

```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                       FOR THE DISTRICT OF HAWAII

 3                                   )
     UNITED STATES OF AMERICA,        )   CR 03-00502 SOM
 4                                    )
                 Plaintiff,           )   Honolulu, Hawaii
 5        vs.                         )   May 18, 2004
                                      )   9:00 A.M.
 6   MICHAEL TRENT BARNES,            )
                                      )   F/H Government's Motion
 7               Defendant.           )   in Limine to Exclude
                                      )   Evidence at Trial
 8   _____)

 9
                   TRANSCRIPT OF SEALED PROCEEDINGS
10            BEFORE THE HONORABLE SUSAN OKI MOLLWAY
                     UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13   For the Government:         BEVERLY WEE SAMESHIMA
                                 Office of the U.S. Attorney
14                               PJKK Federal Bldg.
                                 300 Ala Moana Blvd. Ste. 6100
15                               Honolulu, HI 96850

16   For the Defendant:          MICHAEL A. GLENN
                                 Low Cost Legal Services
17                               Executive Ctr.
                                 1088 Bishop St., Ste. 703
18                               Honolulu, HI 96813

19   Official Court Reporter:    Debra Kekuna Chun, RPR, CRR
                                 United States District Court
20                               300 Ala Moana Blvd. Ste. C285
                                 Honolulu, HI 96850
21                               (808) 534-0667

22

23

24
     Proceedings recorded by machine shorthand, transcript
25   produced with computer-aided transcription (CAT).
```

```
 1   TUESDAY, MAY 18, 2004                    9:05 O'CLOCK A.M.
 2        (Sealed hearing in open court:)
 3             THE COURT:  Miss Tower, you wanted to be heard.
 4             MS. TOWER:  Good morning, Your Honor.  Pamela
 5   O'Leary Tower on behalf of Roger --
 6             THE WITNESS:  Christie.
 7             MS. TOWER:  -- Christie, the witness -- the
 8   proposed witness in this case.  Defense witness, I might
 9   add.
10             I have taken the court's suggestion and have
11   spoken to Reverend Christie about what I believe his
12   testimony would entail were he to take the stand.  And
13   without disclosing that but based upon my own professional
14   experience, it's my opinion that, if he takes the stand
15   and even states after his name what he does, he will have
16   opened the door to any cross-examination by the government
17   counsel.
18             I would hope that defense counsel for Reverend
19   Barnes wouldn't do such a thing.  I suspect that he
20   intends to.  I have grave concerns about that, something
21   that I might want to talk to the court about later
22   separately.  But I have extra concerns for Reverend
23   Christie because, if he does testify as anticipated, as I
24   understand, he will incriminate himself.
25             THE COURT:  Yeah.  Well, this was my concern to
```

1   start with; so the witness will recall I raised this

2   concern.  And then at that time I was not even aware that

3   Mr. Glenn was his attorney.  He confirmed that Mr. Glenn

4   was his attorney.  Mr. Glenn professed that this was no

5   problem.  I was totally unpersuaded and had you come up,

6   which I am very grateful to you for doing on just a

7   moment's notice.

8              But you understand that your independent

9   attorney, who really has no ax to grind in this, who has

10  no interest in the merits of the government's case or the

11  merits of Mr. Barnes' defense, but whose only interest is

12  in making sure that you take advantage of all the

13  protections that our constitution offers you, that she is

14  concerned that you are putting yourself in harm's way if

15  you testify.

16             Now, knowing that, what is it that you propose

17  to do in this hearing?

18             THE WITNESS:  I'm very grateful for her

19  advice -- I'm very grateful for her advice, and I

20  understand the risk.  My ministry is about speaking the

21  truth about this issue, and I feel strongly about it.  I

22  have testified in other -- in state cases, and I feel

23  that's part of my service to the people in my ministry

24  that I will testify in their favor.  And I feel like I

25  need to keep doing so.

```
 1          MS. TOWER:  I think, though, by testifying in
 2   their favor, I've explained to Reverend Christie that it
 3   requires him to incriminate himself because in the offer
 4   of proof, which is what defense counsel said Reverend
 5   Barnes, the defendant, will testify to or will offer
 6   evidence about, it's fully incriminating.  Thank God, it's
 7   not signed by Reverend Barnes.  But that's what the nature
 8   of the testimony is going to be, as I understand it.  It
 9   has to be -- in order for them to meet the threshold that
10   Your Honor says is the legal threshold to present this
11   defense, they have to show the existence of a church and a
12   tenet.  And once they get into the tenet, that's -- it's
13   all over in my opinion, Your Honor.  He will open himself
14   to federal prosecution.
15          The fact that the state has not done anything is
16   of no concern to me because there's a statute of
17   limitations over there as well, and they may well be
18   waiting, or they just may well not care.  But they're
19   different systems, and there's -- the federal system may
20   care.  In fact, I think they will care.  And my concern is
21   that the minute he opens his mouth to answer the questions
22   put to him by defense counsel, who is in my opinion
23   putting this man in harm's way, that that is sufficient
24   for a search warrant, that the ball will roll, that it can
25   simply only get worse for Reverend Christie.
```

```
 1              THE COURT: You see, this is what's going to
 2   happen. I know that you have followers that you would
 3   like to serve. But it will probably undermine your
 4   ability to serve those people if you end up being in jail
 5   for a number of years, and that is a distinct possibility
 6   if you testify.
 7              The federal government is much more aggressive
 8   with the drug crimes than the state sometimes is. That's
 9   not always true, but you understand, first of all, there
10   are different jurisdictions. Many times the state will
11   hold back and cooperate with the federal government so
12   that the federal government will end up being the entity
13   that prosecutes, not the state. And the reason for that
14   often is that, when the law enforcement agents on both
15   sides, the state and the federal side, look at what the
16   penalties are, for most of these drug crimes the penalties
17   are significantly higher in the federal system than they
18   are in the state system.
19              So if you were prosecuted and you were found
20   guilty, you would probably be looking at years, not
21   months, and I want you to understand that that is highly
22   unlikely to help you in your ministry, and you may better
23   serve your ministry by being available to people to help
24   them.
25              I am very concerned about this. I am not
```

 1    questioning the sincerity of your beliefs, but I am
 2    concerned that the first advice -- well, I don't know if
 3    it's the first advice, but your primary legal advice has
 4    been from Mr. Glenn, and his loyalties were not entirely
 5    to you.  I realize that he is taking the position that
 6    they were not divided loyalties, that all of the people
 7    that he was representing have the same interests.  I am
 8    not persuaded of that.  I have real concerns that your
 9    interests are quite distinct from other interests that he
10    has a duty to represent.
11             THE WITNESS:  I think you're correct in that.
12             THE COURT:  And so I want to make sure that that
13    divided loyalty on his part is not coloring the way that
14    you are considering what I'm saying and what your attorney
15    is saying.
16             You see, I would like for this to be a fair
17    trial, but I do not have a stake in who ultimately wins at
18    trial.  I would like the process to be fair.  The result
19    that occurs is the result that occurs.  It will not
20    benefit me or hurt me one way or the other if the jury
21    finds for the prosecution or for the defendant.
22             But in that process, in insuring that the
23    process is fair, somebody has to protect you.  And that is
24    why you have this attorney, who has nothing to do with any
25    other person or entity in this case and has that loyalty

1  only to you.  So I urge you to take seriously what it is
2  she is telling you.
3          MS. TOWER:  I think the other concern I have,
4  too, is that you need to understand that I represent you,
5  not defense counsel and not his client, and that my duty
6  of loyalty is to you alone.  And as a defense attorney, I
7  understand his need, defense counsel's, to put on the best
8  defense for his client.  But I also understand that in
9  situations having to do with witnesses who may have
10 helpful information, in most cases it's not incriminating
11 information, but you need to be very careful with advising
12 them.  My feeling is you have not been fully advised of
13 the ramifications -- the almost certain ramifications of
14 your testimony should you go ahead and testify as you've
15 indicated that you might want to.
16          This is a sealed hearing right now.  It's in
17 camera.  You have no obligation to tell Mr. Bennett what
18 it is that was shared here.
19          THE COURT:  Mr. --
20          THE WITNESS:  Mr. Barnes, Reverend --
21          MS. TOWER:  I mean, no, Reverend Barnes or the
22 defense counsel.
23          THE COURT:  Mr. Glenn.
24          MS. TOWER:  Mr. Glenn.  I'm sorry.  You have no
25 obligation to tell anybody.  That's why it's a sealed

1  hearing.  It's between you and me, and it stays with you
2  and me and with the court personnel and the judge.
3         THE COURT:  But, you see, we are not asking you
4  the substance of your testimony.  We are simply warning
5  you that certain consequences may flow from certain
6  testimony.  But right now you are not giving us the facts
7  that you will have to give if you are sitting in that
8  witness chair and the attorneys for both sides are here.
9         First of all, I am concerned that what Mr. Glenn
10 will ask of you will by itself incriminate you, but that
11 isn't even half of the problem because you can be sure
12 that Miss Sameshima is going to be fairly aggressive in
13 questioning you, and she is going to be laying the
14 foundation for what I think -- I think you have to assume
15 that within a few weeks there will be federal agents at
16 your place and that you will be arrested and that you will
17 then be put in jail.  And maybe you'll get out on bail,
18 but, eventually, you'll be in Mr. Barnes' position.  And
19 if you are found guilty, then, as I say, it will be
20 years -- not days, not months, not weeks, but likely years
21 that you will be in jail.  And it may be that you will not
22 be held here in Honolulu even.  It may be that you will be
23 shipped to some facility on the mainland because that is
24 not something that I nor you will control.
25         Would you like to talk to Miss Tower further?

```
 1              THE WITNESS:  I really get the drift, and I'm
 2   becoming convinced that --
 3              MS. TOWER:  I don't want --
 4              THE WITNESS:  I have a cause.  I mean, I have a
 5   person -- I'm a person and I have a cause, and I want the
 6   cause to continue.
 7              THE COURT:  Yes.
 8              THE WITNESS:  The cause is enormous, and it's
 9   disserved if I'm behind bars --
10              THE COURT:  That's right.
11              THE WITNESS:  -- from my point of view.
12              THE COURT:  That's right.  This is not a
13   situation where martyrdom on your part is going to inspire
14   people.  As I understand what you are doing, and I can't
15   profess to be fully informed on your ministry, but it is
16   one of education.  And if I am correct that it is one of
17   education, education is not going to effectively occur if
18   you are not there to perform that primary task that you
19   have devoted yourself to and have taken upon yourself.
20              So far from thinking that you are going to
21   martyr yourself and thereby inspire followers, I think you
22   have to be fearful that your cause will die without your
23   inspiration present.  And so I don't know that your
24   greater end is going to be served by sacrificing yourself
25   in this way for one person, when you have many other
```

```
 1   people that you would like to minister to.
 2              MS. TOWER:  There's one other thing we
 3   overlooked, or at least I overlooked, is that during the
 4   course of your testimony, should you choose to testify --
 5   and we don't think you should -- I don't, as your
 6   counsel -- Miss Sameshima or even Mr. Glenn, I don't know
 7   his agenda.  Glenn; right?  Could ask you about his own
 8   client --
 9              THE COURT:  That's correct.
10              MS. TOWER:  -- and you would be put in the
11   position of incriminating his client.
12              THE COURT:  And others.
13              MS. TOWER:  And others.
14              THE COURT:  You may well be asked about other
15   people.
16              MS. TOWER:  Reverend Christie, how many others
17   are members, you know, naming names.  And, certainly, the
18   prosecutor would be well within her rights in order --
19              THE COURT:  Yes.
20              MS. TOWER:  -- to establish or not establish the
21   existence of a church of finding how many members are in
22   this putative church; so --
23              THE COURT:  And who they are.
24              MS. TOWER:  And who they are.
25              THE COURT:  So that you may end up -- I mean, it
```

1   will be one thing for you to say that you will give
2   yourself over to this risk, but what will you do, in
3   giving yourself over, to putting other people also behind
4   bars with you?  Your entire congregation may be put behind
5   bars as a result.
6           And these are very real.  This is not a scare
7   tactic.  I think it is a highly probable result of your
8   testifying.  And no matter how strongly held your
9   religious beliefs are, I cannot see what profit you get
10  spiritually out of putting you and yourself behind bars
11  for years.
12          THE WITNESS:  I choose not to go in that
13  direction to martyr myself.  My cause has called me to
14  be -- to build my own courage, I must say, in a very
15  public way.  In state court, in the newspapers, throughout
16  the State of Hawai'i, on the Internet, I'm a very public
17  person about my sacrament and about my cause, and I'm
18  frankly surprised that I'm coming to this conundrum
19  today --
20          THE COURT:  Well, you see --
21          THE WITNESS:  -- because I have done such bold
22  things that people have advised me against for so long.
23          THE COURT:  But there is something special about
24  promising to tell the truth and making those very same
25  statements in a courtroom under oath.  That is a big

```
 1   difference.  And regardless of what danger may come to you
 2   from speaking out publicly, to the press, to the media, on
 3   the web, there is a material difference between that and
 4   sitting in this witness chair, promising to tell the
 5   truth.  That sitting in the witness chair, promising to
 6   tell the truth, and incriminating yourself is a surefire
 7   way to get charged with a crime.
 8              THE WITNESS:  I didn't know that that was
 9   crossing a new threshold, and I thank you for bringing it
10   to my attention, Your Honor.  You've been very kind in
11   looking out for my well-being.
12              I'd like to continue being a bold activist and
13   for this cause, very worthy cause.
14              THE COURT:  Okay.  That may have other -- there
15   may be other legal advice you should get on that, but Miss
16   Tower and I right now are only concerned about you sitting
17   on the witness chair in this case.  So I take it that you
18   are now going to exercise your right not to take the
19   stand.
20              THE WITNESS:  Yes, ma'am.
21              THE COURT:  Okay.  Then let's open the doors and
22   call people in.
23         (Sealed hearing concluded.)
24
25
```

```
 1                  COURT REPORTER'S CERTIFICATE
 2              I, Debra Kekuna Chun, Official Court Reporter,
 3    United States District Court, District of Hawaii, do
 4    hereby certify that the foregoing is a correct transcript
 5    from the record of proceedings in the above-entitled
 6    matter.
 7              DATED at Honolulu, Hawaii, August 4, 2006.
 8
 9                                     /s/ Debra Chun
10                                     DEBRA KEKUNA CHUN
11                                     RPR, CRR
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```