FLORENCE T. NAKAKUNI          #2486
United States Attorney
District of Hawaii

BEVERLY WEE SAMESHIMA         #2556
Chief, Organized Crime and
Narcotics Section

MICHAEL K. KAWAHARA          #1460
Assistant U.S. Attorney
PJKK Federal Building
300 Ala Moana Blvd., Room 6-100
Honolulu, Hawaii  96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
mike.kawahara@usdoj.gov

Attorneys for Plaintiff
United States of America

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
SEP 27 2013
at 10 o'clock and ___ min. ___ M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CRIM. NO. 10-00384 LEK-01 |
| ) | |
|       Plaintiff, ) | MEMORANDUM OF PLEA AGREEMENT |
| ) | **[ROGER CUSICK CHRISTIE]** |
|    VS. ) | |
| ) | |
| ROGER CUSICK CHRISTIE,    (01) ) | |
| SHERRYANNE L. CHRISTIE,   (02) ) | |
| SUSANNE LENORE FRIEND,    (03) ) | |
| TIMOTHY M. MANN,          (04) ) | |
| RICHARD BRUCE TURPEN,     (05) ) | |
| WESLEY MARK SUDBURY,      (06) ) | |
| DONALD JAMES GIBSON,      (07) ) | |
| ROLAND GREGORY IGNACIO,   (08) ) | |
| PERRY EMILIO POLICICCHIO, (09) ) | |
| JOHN DEBAPTIST BOUEY III, (10) ) | |
| MICHAEL B. SHAPIRO,       (11) ) | |
| AARON GEORGE ZEEMAN,      (12) ) | |
| VICTORIA C. FIORE,        (13) ) | |
| JESSICA R. WALSH,         (14) ) | |
| ) | |
|       Defendants. ) | |

## MEMORANDUM OF PLEA AGREEMENT
## (ROGER CUSICK CHRISTIE)

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the UNITED STATES OF AMERICA, by its attorney, the United States Attorney for the District of Hawaii, and the Defendant, ROGER CUSICK CHRISTIE (hereinafter "defendant" or "R. Christie"), and his appointed attorney, Thomas M. Otake, Esq., of Honolulu, HI, have agreed upon the following:

1.    Defendant acknowledges that he has been charged as follows in the First Superseding Indictment (returned January 17, 2013, hereinafter "Indictment"):

Count 1: Conspiring with his named co-defendants and others to manufacture, to distribute, and to possess with intent to distribute marijuana, a Schedule I controlled substance, said offense involving one-hundred (100) or more marijuana plants, as well as harvested and processed marijuana and other products containing marijuana, said offense occurring from a time unknown up through and including July 8, 2010, in violation of 21 U.S.C. 846, 841(a)(1), and 841(b)(1)(B);

Count 2: Manufacturing marijuana on or about July 22, 2009 (involving one-hundred (100) or more marijuana plants, to wit: approximately 284 marijuana plants), in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(B), and 18 U.S.C. 2;

Count 3: Possessing with intent to distribute marijuana on or about July 22, 2009 (involving one-hundred (100) or more marijuana plants, to wit: approximately 284 marijuana plants), in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(B), and 18 U.S.C. 2;

Count 13: Using and maintaining a place (94 Kamehameha Avenue, Hilo, HI) for the purpose of manufacturing and distributing marijuana during the period in or about 2008 up through and including on or about July 8, 2010, in violation of 21 U.S.C. 856(a)91) and 856(b);

2

Count 14: Distributing some quantity of marijuana on or about May 21, 2008, in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(D);

Count 15: Distributing some quantity of marijuana on or about June 24, 2008, in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(D);

Count 16: Distributing some quantity of marijuana on or about August 13, 2008, in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(D);

Count 17: willful failure to file a federal tax return for calendar year 2008, in violation of Title 26, United States Code, Section 7203; and

Count 18: willful failure to file a federal tax return for calendar year 2009, in violation of Title 26, United States Code, Section 7203.

Forfeiture allegation: the forfeiture to the United States of any and all property of defendant that either constituted drug proceeds from the manufacture, distribution, and/or possession with intent to distribute marijuana, as charged in Count 1, and/or because such property was used to commit/facilitate the commission of the crime charged in Count 1, specifically, the following:

-$21,494.00 in U.S. currency, which was seized from R. Christie's and co-defendant Sherryanne L. Christie's (hereinafter "S. Christie")[1] possession on March 10, 2010 and is presently held by the United States; and

-that real property known as Apartment #312, Building A, 360 Kauila Street, Hilo, Hawaii, titled in the name of Roger Christie, unmarried, and designated as Tax Map Key Number 3-2-6-5-10-42, together with all appurtenances and improvements, and more specifically described in Exhibit "A" to the Indictment (hereinafter referred-to as the "apartment").

---

[1] Co-defendant S. Christie was previously known as Sherryanne St. Cyr.  On or about January 6, 2012, they became married, and the latter changed her name to Sherryanne L. Christie.

3

Defendant has already received a copy of this Indictment.

2.   Defendant has read the charges and allegations against him contained in the Indictment, and these charges have been fully explained to him by his attorney.   In making his decision to plead guilty, defendant has had the full opportunity to consult with his undersigned defense attorney, and he is fully satisfied with the legal representation and advice he has received from his defense attorney.

3.   Defendant fully understands the nature and elements of the crimes and allegations with which he has been charged.

4.   Defendant has either filed, or joined with other co-defendants in the filing of, the following pretrial motions in this case:

(A) Defendant R. Christie's pretrial Motion to Dismiss Indictment filed December 3, 2012 (Docket #468, hereinafter "R. Christie dismissal motion").

(1) By written Order entered May 7, 2013 (Docket #598), the District Court denied this dismissal motion (hereinafter referred-to as the "adverse determination of the R. Christie dismissal motion").

(B) Co-defendant John DeBaptist Bouey's pretrial Motion to Suppress Evidence filed December 10, 2012 (Docket #476, hereinafter "suppression motion").

(1) By minute order entered March 29, 2013 (Docket #586), the District Court denied the suppression motion, with a formal written Order to follow (hereinafter referred-to as the "adverse determination of the suppression motion", which will also include the formal written Order when prepared and filed by the District Court).

(C) Co-defendant S. Christie's pretrial Motion to Dismiss Indictment for Unconstitutional Vagueness filed December 3, 2012 (Document #469, hereinafter "S. Christie dismissal motion").

(1) By written Order entered May 20, 2013 (Docket #601), the District Court denied this dismissal motion (hereinafter referred-to as the "adverse determination of the S. Christie dismissal motion").

(D) Defendants R. Christie and S. Christie's pretrial Motion in Limine to Present Religious Freedom Restoration Act Defense filed April 1, 2013 (Docket #587, hereinafter "RFRA motion").

(1) By minute order entered September 11, 2013 (Docket #719), the District Court denied the RFRA motion, making a specific finding pursuant to 42 U.S.C. 2000bb-1(b) that the Government's substantial burdening of any religious exercise by R. Christie or S. Christie through the application of the Controlled Substances Act to them was justified because it was in furtherance of a compelling government interest and constituted the least

restrictive means of furthering that interest.   This specific

finding of the District Court, entered pursuant to 42 U.S.C.

2000bb-1(b), is hereinafter referred-to as the "adverse

determination of the RFRA motion".   The minute order also indicated

that full Order would subsequently be filed.

(2) The Christies' RFRA motion also raised a

separate contention that credibility determinations and findings of

fact necessary under RFRA should be made by a trial jury and not by

the District Court.   To the extent that the District Court has ruled

or will rule against R. Christie and S. Christie on this jury

contention (either in prior bench rulings or in its full Order when

filed), this particular ruling and any associated findings necessary

thereto are not part of the "adverse determination of the RFRA motion"

and consequently are not appealable pursuant to the conditional pleas

provided-for in this agreement.

5A.   Pursuant to F.R.Cr.P. 11(a)(2), and with the approval

of the District Court and the consent of the government, defendant

will enter voluntary conditional pleas of guilty to the following

counts of the Indictment:

(1) Count 1 (conspiracy involving 100 or more

marijuana plants, in violation of 21 U.S.C. 846, 841(a)(1), and

841(b)(1)(B));

(2) Count 17 (willful failure to file a federal tax

return for calendar year 2008); and

(3) Count 18 (willful failure to file a federal tax return for calendar year 2009).

5B.   In so pleading guilty to Counts 1, 17, and 18 of the Indictment, defendant also expressly reserves his right to have an appellate court review the following, adverse pretrial determinations of the District Court:

(1) Adverse determination of the R. Christie dismissal motion;

(2) Adverse determination of the suppression motion;

(3) Adverse determination of the S. Christie dismissal motion; and

(4) Adverse determination of the RFRA motion.

5C.   Defendant further understands that pursuant to F.R.Cr.P. 11(a)(2), he can only withdraw his guilty pleas if the following occurs:

(1) If an appellate court reverses any of the four adverse determinations enumerated in paragraph 5B(1) - (4) above, then he may withdraw his plea to Count 1 of the Indictment; and

(2) Defendant may only withdraw his guilty pleas to Counts 17 and 18 of the Indictment if an appellate court reverses the adverse determination of the suppression motion (see paragraph 5B(2) above).

5D.   Defendant further understands that the appellate reservation provided-for herein does not authorize him to collaterally attack these adverse determinations through collateral proceedings such as habeas corpus or 28 U.S.C. 2255 actions. See paragraph 14(a) of this agreement.

5E.   With respect to the Forfeiture Allegation of the Indictment, Defendant also agrees to the following:

(1) The forfeiture to the United States of the $21,494.00 seized from R. Christie and co-defendant S. Christie's possession on March 10, 2010 pursuant to 21 U.S.C. § 853, as property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the offense alleged in Count 1 of the Indictment.

(2) The forfeiture to the United States of the apartment pursuant to 21 U.S.C. § 853, as property used to facilitate the commission of the crime charged in Count 1 of the Indictment, as described in greater detail in paragraph 9 of this Agreement.

5F.   At the time of sentencing, the prosecution will also move to dismiss Counts 2, 3, 13, 14, 15, and 16 of the Indictment insofar as defendant herein is concerned,

5G.   In addition, the prosecution accepts the foregoing pleas of guilty as a complete resolution of all Federal criminal matters against defendant now known to the United States in the

District of Hawaii.

5H.   Both the prosecution and defendant remain free to make their own sentencing recommendations to the District Court.

6.   Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in the above-captioned criminal case.

7.   Subject to the reservation of appellate rights contained herein, Defendant enters these pleas because he is in fact guilty of the crimes charged against him in Counts 1, 17, and 18 of the Indictment, and he also agrees that these pleas are voluntary and not the result of force or threats.   Defendant also agrees that his pleas are based upon the terms contained in this Agreement.

8.   Defendant understands that the statutory penalties for the offenses to which he is pleading guilty are as follows:

(A) As to Count 1 of the Indictment, an imprisonment term of at least five (5) years and up to forty (40) years, a fine of up to $5,000,000, or both, and a term of supervised release of at least four (4) years and up to life in addition to any imprisonment term adjudged. See 21 U.S.C. 846 and 841(b)(1)(B); and

(B) As to each of Counts 17 and 18 of the Indictment, an imprisonment term of up to one year, a fine of up to $100,000, or both, and a discretionary term of supervised release of up to one (1) year.   In addition, as a condition of probation and/or supervised

9

release, the Court may also require restitution for the full amount

of the victim's loss (the victim here being the IRS).   See 26 U.S.C.

7203, 18 U.S.C. 3571, U.S.S.C. Guidelines 5D1.2(a)(3) and

5E1.1(a)(2).

(C) At the discretion of the Court, defendant may also

be denied any or all federal benefits, as that term is defined in

21 U.S.C. § 862, (a) for up to five years if this is defendant's first

conviction of a federal or state offense consisting of the

distribution of controlled substances, or (b) for up to ten years

if this is defendant's second conviction of a federal or state offense

consisting of the distribution of controlled substances.   If this

is defendant's third or more conviction of a federal or state offense

consisting of the distribution of controlled substances, the

defendant is permanently ineligible for all federal benefits, as that

term is defined in 21 U.S.C. § 862(d).

(D) In addition, the Court must impose a $100 special

assessment as to each felony count to which the Defendant is pleading

guilty, and a special assessment of $25 as to each misdemeanor count

to which the Defendant is pleading guilty.   Defendant agrees to pay

the appropriate amount for each count to which he is pleading guilty

(that is, $100 for Count 1 of the Indictment and a total of $50 for

Counts 1 and 2 of the Information) to the District Court's Clerk's

Office, to be credited to said special assessments, before the

commencement of any portion of sentencing.   Defendant acknowledges

that failure to make such full advance payment in a form and manner

acceptable to the prosecution will allow, though not require, the

prosecution to withdraw from this agreement at its option.

(E)  In addition, the sentence for Count 1 of the

Indictment could also include the forfeiture of defendant's property

constituting, or derived from, proceeds obtained directly or

indirectly as a result of this charged crime, or which were used (or

were intended to be used) in any manner or part to commit or to

facilitate the commission of this crime.

9.   Defendant admits the following facts and agrees that

they are not a detailed recitation, but merely an outline of what

happened in relation to the charges to which Defendant is pleading

guilty and his admission to the forfeiture allegations:

### As to Count 1 and the Forfeiture Allegation of the Indictment:

(A)  R. Christie has operated the "THC Ministry" or

"Hawaii Cannabis Ministry" (hereinafter "Ministry") since

approximately 2000, being located during the 2008-2010 time frame

at 94 Kamehameha Avenue, Hilo, Hawaii.   Since at least 2008, Christie

has engaged in the cultivation and distribution of marijuana (which

he referred-to as "cannabis") through the Ministry.   The marijuana

which was distributed through the Ministry included: (i) processed

marijuana (both in "buds" and "shake" form) in varying weight quantities (as for example, 1/16 ounce, 1/8 ounce, 1/4 ounce, 1/2 ounce, and one ounce); (ii) edibles which contained marijuana (such as brownies, "ganja balls", and cookies); (iii) tinctures containing marijuana; and (iv) live marijuana plants.

(B)   During this period of time, co-defendant S. Christie also assisted R. Christie in this cultivation and distribution of marijuana at the Ministry.   For several months during 2009, S. Christie herself supervised the Ministry's operations while R. Christie was recuperating at home with a broken ankle.

(C)   R. Christie also had several employees (as co-defendants Victoria C. Fiore and Jessica R. Walsh) who worked at the Ministry's business premises.   These employees also assisted in the distribution of marijuana under the direction and supervision of R. Christie and S. Christie (the latter doing so while R. Christie was recuperating, as described earlier).

(D)   In order to obtain his marijuana inventory (both processed marijuana and live marijuana plants), R. Christie had several suppliers from whom he purchased marijuana, as well as other persons growing marijuana for him, on the Island of Hawaii.   During 2008 - 2009, R. Christie's marijuana suppliers and other persons growing marijuana for him included the following: Richard Bruce

12

Turpen, Donald James Gibson, Roland Gregory Ignacio, Perry Emilio Policicchio, and Michael B. Shapiro. S. Christie herself was at least aware that some of these persons were supplying marijuana to the Ministry.

(E) In late 2008 - early 2009, R. Christie also recruited co-defendants Susanne Lenore Friend and Timothy M. Mann (the latter being Friend's husband) to start up a marijuana cultivation operation for the Ministry at their farm on the Island of Hawaii; R. Christie's plan was for all of Friend and Mann's harvested marijuana to be provided to the Ministry (it was further intended that this marijuana would then be distributed through the Ministry). In about mid - late June 2009, Friend effected two deliveries of harvested marijuana from her farm to R. Christie, which was thereafter made available for distribution at the Ministry. As of July 22, 2009, Friend and Mann had approximately 284 marijuana plants under cultivation at their farm (law enforcement officers searched the farm on this date and recovered these marijuana plants). S. Christie also knew at this time that Friend and Mann were growing marijuana at their farm to be distributed through the Ministry.

(F) In order to supply the Ministry's anticipated needs for the present and future, R. Christie believed and expected that over time, the cultivation operation being run by Friend and Mann would involve one-hundred (100) or more marijuana plants.

(G)   At all relevant times herein, both R. Christie and S. Christie resided together at the previously-described apartment (#312, Building A, 360 Kauila Street, Hilo, Hawaii).

(H)   During a search of this apartment on March 10, 2010, law enforcement officers found $9,096.00 in U.S. currency in a locked safe in the bedroom closet.   In addition, on March 10, 2010, law enforcement officers also found $12,398.00 in U.S. currency in R. Christie and S. Christie's bank safety deposit box.   The aggregate amount of the cash found on March 10, 2010 was $21,494.00.   All of these monies were derived from the distribution of marijuana and related marijuana products/services at the Ministry, as charged in Count 1 of the Indictment.[3]

(I) During at least 2009 - 2010:

(1) On a daily basis, R. Christie and S. Christie would store their processed marijuana inventory overnight and over the weekend at the apartment, even though the distribution thereof would generally occur at the Ministry during its business hours (the Christies maintained this marijuana inventory in a cooler, which was taken each business day from the apartment to the Ministry);

(2) On several occasions during 2009, R.

---

[3] Furthermore, an additional $5,512.00 was subsequently recovered from R. Christie and S. Christie's possession at the apartment on July 8, 2010; this additional amount has already been administratively forfeited to the United States as drug proceeds, and defendant does not contest that forfeiture.

Christie accepted delivery at the apartment of bulk quantities of marijuana from some of his suppliers, and as described above, he also kept at the apartment the cash proceeds from the Ministry's marijuana distribution activities.

(3) R. Christie and S. Christie also broke down these bulk quantities of marijuana in smaller distribution amounts at the apartment.

(J) At all relevant times herein, R. Christie was the sole owner of the aforesaid apartment.  There are no encumbrances or mortgages on the apartment.

### As to Counts 17 and 18 of the Indictment:

(K) During each of calendar years 2008 and 2009, R. Christie admits that he had net income of at least $52,000 per year.

(L) For calendar year 2008, a taxpayer had to file a federal individual tax return if he/she had net income of at least $8,950.00.  For calendar year 2009, a taxpayer had to file a federal individual tax return in he/she had net income of at least $9,350.00.

(M) R. Christie further admits that because of this income, he knew he was supposed to file a federal individual tax return for each of these calendar years at the time prescribed for said filings (that is to say, on or before April 15 of the following year).

(N) R. Christie willfully failed to file any federal

income tax returns for calendar years 2008 and 2009.

10.   Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charges to which the Defendant is pleading guilty adequately reflect the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

11.   Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of Defendant in connection with this matter:

a.   Factual stipulations:

(1) Quantity of marijuana involved in Count 1 of the Indictment:

(i) Two-hundred eighty-four (284) marijuana plants, which law enforcement officers found at the Friend-Mann farm on July 22, 2009, which given the Guideline equivalency of 100 grams per plant (see Note (E) to Drug Quantity Table, U.S.S.C. Guideline 2D1.1(c)), amounts to 28.4 kilograms of marijuana.

(2) Aggravating role with respect to Count 1 of the Indictment: Pursuant to U.S.S.C. Guideline 3B1.1(a), defendant

was the organizer or leader of the activities alleged in Count 1 of the Indictment that involved five or more participants and was otherwise extensive, for which a four (4) level increase in defendant's offense level for said Count shall be assessed.

      (3) <u>Stipulation concerning the amount of tax loss associated with Counts 17 and 18 of the Indictment in order to determine the Base Offense Level (see U.S.S.C. Guideline 2T1.1)</u>: Assuming a net income of at least $52,000 per year for calendar years 2008 and 2009, respectively (as previously referenced in paragraph 9 of this Agreement), the stipulated tax loss for Guideline sentencing purposes herein would be $7,100.00 for calendar year 2008 (Count 17) and $6,844.00 for calendar year 2009 (Count 18), after taking into account the applicable standard deduction and one personal exemption, and utilizing the prevailing tax rates for a single individual.

      b.  <u>Offense Level Stipulations</u>:

      (1)  Based upon the quantity of marijuana involved, defendant's Base Offense Level for Count 1 of the Indictment is "**18**" (20 - 40 KG of marijuana, <u>see</u> Drug Quantity Table, U.S.S.C. Guideline 2D1.1(c)(11)).

      (2) Defendant's Base Offense Level for Counts 17 and 18 of the Indictment is "**12**". <u>See</u> Guideline 2T1.1(a) and 2T4.1(D).

c.   <u>Restitution for Counts 17 and 18</u>: Restitution
to the U.S. Internal Revenue Service ("IRS") in the amount of the
stipulated tax loss (<u>see</u> paragraph 11(a)(3)) shall be one of the
conditions of defendant's term of supervised release/probation.

12.   The parties agree that notwithstanding the parties'
Agreement herein, the Court is not bound by any factual stipulation
entered into by the parties but may, with the aid of the presentence
report, determine the facts relevant to sentencing.

13.   The parties are presently unaware of any factual
disputes affecting the sentencing of defendant herein.

14.   The Defendant is aware that he has the right to appeal
the sentence imposed under Title 18, United States Code, Section
3742(a).   Other than the conditional pleas and associated
reservation of rights to appeal certain adverse pretrial
determinations set forth in paragraph 5B of this agreement, Defendant
knowingly waives the right to appeal any sentence within the maximum
provided in the statute of conviction or the manner in which that
sentence was determined on any of the grounds set forth in Section
3742, or on any ground whatever, in exchange for the concessions made
by the prosecution in this plea agreement.

a.   The Defendant also waives his right to challenge
his sentence or the manner in which it was determined in any
collateral attack, including, but not limited to, a motion brought

under Title 28, United States Code, Section 2255, except that defendant may make such a challenge based on a claim of ineffective assistance of counsel.

b.   The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

15.   The Defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines.   Subject to the exceptions noted in the previous paragraph, the Defendant is surrendering his right to challenge any sentence within the statutory maximum, or the manner in which it was determined, including, but not limited to, a sentence that the Defendant perceives to be an incorrect application of the Guidelines. The Defendant further agrees that there is no promise or guarantee of the applicability or nonapplicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

16.   The Defendant understands that pursuant to Guideline 6B1.1(c), this Agreement cannot be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary pursuant to Guideline 6A1.1.   The Defendant understands that the Court will not accept an agreement unless the

Court determines that the remaining charges adequately reflect the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

17.   Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.   If Defendant persisted in a plea of not guilty to the charges against him he would have the right to a public and speedy trial.   The trial could be either a jury trial or a trial by a judge sitting without a jury.   The Defendant has a right to a jury trial.   However, in order that the trial be conducted by the judge sitting without a jury, the Defendant, the prosecution and the judge all must agree that the trial be conducted by the judge without a jury.

b.   If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.   Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.   The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.   The jury would be instructed that the Defendant is presumed innocent, and that it could not convict him unless, after hearing all the admissible evidence, it was persuaded of his guilt beyond a reasonable doubt.

c.   If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the admissible evidence, whether or not he or she was persuaded of the Defendant's guilt beyond a reasonable doubt.

d.   At a trial, whether by a jury or a judge, the prosecution would be required to present its relevant witnesses and other admissible evidence against the Defendant.  Defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.  In turn, Defendant could present his relevant witnesses and other admissible evidence on his own behalf.  If the witnesses for the Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

e.   At a trial, the Defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

f.   At a trial, Defendant would have a right to have the jury determine beyond a reasonable doubt the number of marijuana plants charged in the Indictment.

18.   Defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph. Defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

19.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

20.    Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto.  The parties understand that the Court's rejection of any factual stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by factual stipulations between the parties.

21.    Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of Defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

22.    Defendant agrees to immediately and voluntarily forfeit to the United States all of his right, title, and interest in the apartment and $21,494.00 in U.S. currency and to take all necessary actions to expeditiously implement this forfeiture and to pass clear title thereto to the United States.  These actions on defendant's part include, but are not limited to, the signing of a Preliminary Order of Forfeiture, a Final Order of Forfeiture, and any other relevant documents necessary to implement transfer of title

22

to the United States.

Defendant waives all rights in and claims to his interest in the apartment and $21,494.00 in U.S. currency, and hereby consents to the forfeiture thereof to the United States.   The defendant knowingly and voluntarily waives any claim or defense he may have under the Eighth Amendment to the United States Constitution, including any claim of excessive fine or penalty with respect to his interest in the apartment and $21,494.00 in U.S. currency.   The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of his interest in the apartment and $21,494.00 in U.S. currency.

The forfeiture may be processed through administrative, civil judicial, or criminal proceedings in the Government's sole discretion.   Defendant hereby waives, and agrees to the tolling of, any rule or provision of law limiting the time for commencing, or providing notice of, any administrative or civil judicial forfeiture proceeding with respect to his interest in the apartment and $21,494.00 in U.S. currency, including but not limited to, such limitations contained in 18 U.S.C. § 983 and 19 U.S.C. § 1621, and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.   Defendant agrees to consent promptly upon request to the entry of any orders deemed necessary by the United States or the Court to complete the forfeiture and disposition of

23

his interest in the apartment and $21,494.00 in U.S. currency.
Defendant waives the requirements of Federal Rules of Criminal
Procedure 32.2 and 43(a) regarding notice of forfeiture in the
charging instrument, announcement of forfeiture in defendant's
presence at sentencing, and incorporation of the forfeiture in the
judgment.  Defendant acknowledges that he understands that the
forfeiture of the property, if the Government elects to conduct the
forfeiture criminally, will be part of the sentence imposed upon
defendant in this case and waives any failure by the Court to advise
defendant of this, pursuant to Federal Rule of Criminal Procedure
11(b)(1)(J), during the change-of-plea hearing.  Pursuant to Rule
32.2(b)(4), defendant will promptly consent to the preliminary order
of forfeiture becoming final as to defendant before sentencing if
so requested by the Government to do so.

Defendant represents and warrants to the government that
he has no interest, either direct or indirect, whether held in his
own name, or in the name of another person or entity, in any other
property, real or personal, that would be subject to forfeiture on
the basis of violations covered by this Agreement.  Defendant
understands and acknowledges that the government is relying upon
defendant's representations in entering into this Agreement.

Defendant further agrees that the forfeiture of his
interest in the apartment and $21,494.00 in U.S. currency shall not

24

be treated as satisfaction of any fine, restitution, reimbursement of cost of imprisonment, or any other monetary penalty this Court may impose upon defendant in addition to the forfeiture.

21. Defendant, and by these presents does for his heirs, statutory survivors, executors, administrators, personal representatives, successors and assignees, hereby releases and forever discharges the United States of America, the Drug Enforcement Administration, Immigration and Customs Enforcement, and the Internal Revenue Service, and their employees, agents or assigns from any claims arising from the seizure, detention and maintenance of the defendant's property in connection with the occurrences which form the basis of this case.

The defendant further acknowledges that pursuant to 31 U.S.C. 3716 (the Debt Collection Improvement Act of 1976), these amounts owed to defendant may also be subject to offset for delinquent taxes and non-tax debts owed to the United States, or delinquent debts owed to states, including past-due child support enforced by states. Defendant further understands and agrees that this agreement, or any judgement, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise his obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time period(s) covered by this

Agreement or any other time period.

22.  Upon the District Court's entry of a final order that forfeits the $21,494.00 and the apartment to the United States, defendant hereby consents and agrees to the following:

A. During the pendency of any appeal reserved in this agreement, the United States may elect, in its sole discretion, to either sell the apartment or to hold onto said apartment (including renting the same).

B. If the United States elects to rent the apartment, defendant agrees that the United States Homeland Security Investigations (HSI) and its designees shall be authorized to do so and to use any rental income received to protect and preserve the apartment, including but not limited to paying for real property taxes, casualty and liability insurance premiums, and the costs of repairs and general maintenance services as deemed necessary and appropriate by HSI and its designees.  Defendant further understands and agrees that any rental income shall be forfeited to the United States as part of the forfeiture of the apartment.

C. If the United States had elected to sell the apartment, and it subsequently becomes necessary to void the final order of forfeiture due to an appellate court's reversal of the District Court's adverse determinations reserved for appeal herein, defendant agrees to accept the return of the net proceeds from the

sale of the apartment in lieu of the apartment itself.

D.   Likewise, should it subsequently become necessary to void the final order of forfeiture due to an appellate court's reversal of the District Court's adverse determinations reserved for appeal herein, the forfeited cash shall be returned to defendant.

23.   The continuing effectiveness of this agreement is conditioned upon co-defendant S. Christie (who is defendant's spouse) also entering into a written plea agreement satisfactory to the prosecution herein, entering a voluntary plea of guilty before the District Court in accordance therewith, and being duly sentenced pursuant to her plea.

DATED:   Honolulu, Hawaii, September 26 , 2013.

AGREED:


FLORENCE T. NAKAKUNI
United States Attorney
District of Hawaii

ROGER CUSICK CHRISTIE
Defendant


BEVERLY WEE SAMESHIMA
Chief, Organized Crime and
Narcotics Section

THOMAS M. OTAKE
Attorney for defendant


MICHAEL K. KAWAHARA
Assistant U.S. Attorney