IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 10-00384(01) LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ROGER CUSICK CHRISTIE,   (01) | ) | |
| SHERRYANNE L. CHRISTIE,  (02) | ) | |
|  formerly known as | ) | |
|  "Sherryanne L. St. Cyr, | ) | |
| SUSANNE LENORE FRIEND,   (03) | ) | |
| TIMOTHY M. MANN,         (04) | ) | |
| RICHARD BRUCE TURPEN,    (05) | ) | |
| WESLEY MARK SUDBURY,     (06) | ) | |
| DONALD JAMES GIBSON,     (07) | ) | |
| ROLAND GREGORY IGNACIO,  (08) | ) | |
| PERRY EMILIO POLICICCHIO,(09) | ) | |
| JOHN DEBAPTIST BOUEY,III,(10) | ) | |
| MICHAEL B. SHAPIRO,      (11) | ) | |
|  also known as "Dewey", | ) | |
| AARON GEORGE ZEEMAN,     (12) | ) | |
| VICTORIA C. FIORE,       (13) | ) | |
| JESSICA R. WALSH, also   (14) | ) | |
|  known as "Jessica Hackman", | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT JOHN DEBAPTIST BOUEY, III'S
MOTION TO SUPPRESS EVIDENCE, FILED DECEMBER 10, 2012, DEFENDANT
ROGER CUSICK CHRISTIE'S JOINDER, FILED DECEMBER 10, 2012, AND
DEFENDANT SHERRYANNE L. CHRISTIE'S JOINDER, FILED MARCH 1, 2013**

Before the Court are: Defendant John DeBaptist Bouey,

III's ("Bouey") Motion to Suppress Evidence, filed on

December 10, 2012 ("Motion to Suppress"); [dkt. no. 476;]

Defendant Roger Cusick Christie's ("Christie") joinder in the

Motion to Suppress, filed on December 10, 2012; [dkt. no. 481;]

and Defendant Sherryanne L. Christie's (formerly known as

Sherryanne L. St. Cyr) ("St. Cyr") joinder in the Motion to Suppress, filed on March 1, 2013; [dkt. no. 567].  Plaintiff the United States of America ("the Government") filed its memorandum in opposition to the Motion to Suppress on January 14, 2013. [Dkt. no. 505.]  This matter came on for hearing on March 4, 2013.  The Court issued its summary ruling denying the Motion to Suppress on March 29, 2013, and stated that a detailed order would be filed.  [Dkt. no. 586.]  The instant order is this Court's decision on the Motion to Suppress, and this order supercedes the March 29, 2013 summary ruling.

       After careful review of the Motion to Suppress, supporting and opposing memoranda, exhibits, and the arguments of counsel, the Court HEREBY DENIES the Motion to Suppress and the joinders thereto, for the reasons set forth below.

## BACKGROUND

       This criminal action arises out of an indictment filed on June 24, 2010 against Bouey and thirteen others,[1] and charging them with, *inter alia*: manufacturing marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2; possessing with the intent to distribute marijuana, in violation of § 841(a)(1) and (b)(1)(B) and § 2; and conspiring to manufacture,

---

       [1]  The other defendants are: Christie, St. Cyr, Susanne Lenore Friend, Timothy M. Mann, Richard Bruce Turpen, Wesley Mark Sudbury, Donald James Gison, Roland Gregory Ignacio, Perry Emilio Policicchio, Michael B. Shapiro, Aaron George Zeeman, Victoria C. Fiore, and Jessica R. Walsh.

distribute and possess with the intent to distribute marijuana, in violation of § 841(a)(1).[2]  [Dkt. no. 2.]

The genesis of the charges against the defendants stem from the operation of The Hawaii Cannabis Ministry ("THC Ministry"), a church in Hilo, Hawai`i founded by Christie in September 2000.  [Mem. in Supp. of Motion to Suppress at 1.] Christie also created an on-line website for the THC Ministry which stated, among other things, that "'[c]ultivation and enjoyment of *Cannabis* sacrament is a fundamental human right provided by God and protected by the First Amendment of the U.S. Constitution.'"  [Id. at 2 (quoting Motion to Suppress, Exh. A, filed 12/14/12 (dkt. no. 491) (Aff. in Supp. of Application by Clement B.K. Sze, dated 4/8/09 ("Sze Aff.")),[3] at ¶ 25.] "Sanctuary Kits" were offered for sale on the THC Ministry's website and, in these kits, the purchaser would receive "plant tags," a "Sanctuary sign," and the "THC Ministry identification card."  [Id. at ¶ 26 (quoting the THC Ministry's website).]  The identification card contained language on one side stating: "'we use cannabis religiously and you can, too.  Religious

---

[2] Bouey was also charged with manufacturing marijuana, in violation of § 841(a)(1) and (b)(1)(D).

[3] Bouey initial moved to file the Sze Affidavit under seal. [Ex Parte Motion to Seal Exhibit "A" in Supp. of Motion to Suppress, filed 12/11/12 (dkt. no. 486).]  This Court denied the motion to seal, noting that the Sze Affidavit had been publicly available since July 8, 2010.  [Entering Order, filed 12/12/12 (dkt. no. 490).]

practitioner & caregiver of cannabis hemp.  www.thc-ministry.org.
Tel: (808) 961-0488.  A member of the Hawaii Cannabis Ministry.'"
[Id. at ¶ 29 (quoting the THC Ministry's website).]

A federal criminal investigation was commenced
regarding Christie and the THC Ministry.  As part of this
investigation, an unidentified confidential source ("Confidential
Source") provided information to law enforcement starting in
August 2007 regarding Christie and the THC Ministry, [Sze Aff. at
¶ 20,] including making a series of controlled purchases of
marijuana from Christie at the THC Ministry's building from
August 31, 2007 through January 4, 2008.  [Id. at ¶¶ 24(a)-(e).]
On May 21, 2008, the Confidential Source introduced Christie to
an undercover agent from the Drug Enforcement Agency ("DEA
Agent"), who recorded conversations between the Confidential
Source, Christie and the DEA Agent.  [Id. at ¶¶ 37-47.]  The DEA
Agent recorded subsequent additional conversations with Christie,
held by telephone and in person, between June 24, 2008 and
September 25, 2008.  [Id. at ¶¶ 48-90.]  Telephone conversations
between the Confidential Source and Christie were also recorded
between September 26, 2008 and November 17, 2008.  [Id. at ¶¶ 92-
93, 96-100, 102-07.]

A pole camera was installed on a telephone pole near
the front entrance to the THC Ministry's building which captured
by video (but without audio) the images of persons as they

entered and exited the "small area outside of the front entrance" of the building.  [Id. at ¶ 134.]  Additionally, law enforcement watched the area around the THC Ministry's building, and observed individuals enter and exit the building, as well as vehicles parking in front of the building.  [Id. at ¶¶ 94-95.]

On November 17, 2008, the Confidential Source met Christie at the THC Ministry.  During this meeting, the Confidential Source purchased eighteen marijuana plants and, in a recorded conversation, discussed the grower of the plants.  [Id. at ¶ 108.]  Between January 3, 2009 and February 25, 2009, the Confidential Source and Christie had several telephone conversations which were recorded and involved the Confidential Source's inquiries about purchasing more marijuana plants.  [Id. at ¶¶ 116-24.]  On February 25, 2009, the Confidential Source purchased twenty-three marijuana plants from Christie at the THC Ministry's building.  [Id. at ¶¶ 125-26.]

A pen register was authorized on May 6, 2008 for a telephone number subscribed to by Christie and used by persons located in the THC Ministry's building, and the order authorizing this pen register was extended during 2008 and 2009.  On July 9, 2008, an additional pen register was authorized for Christie's residence telephone number, and the order authorizing this pen register was extended during 2008 and 2009.  [Id. at ¶¶ 147-48.]

Subsequently, an initial application was made on April 8, 2009 for an order authorizing the interception of wire communications, pursuant to 18 U.S.C. § 2518, for two telephone numbers subscribed to by Christie ("Wiretaps"). [Id. at ¶¶ 150-61.] This application was granted and the Wiretaps were ordered on April 8, 2009. [Mem. in Opp., Attach. 1 (Order Authorizing Interception of Wire Communication, filed 4/8/09 in MC 09-00092 HG-BMK ("4/8/09 Order")) at 2-4.]

## DISCUSSION

In the instant Motion to Suppress, Bouey seeks suppression of all conversations obtained as a result of the Wiretaps. He argues that, in its wiretap application for the drug conspiracy investigation, the Government failed to provide an affidavit that accurately provided a showing of necessity for the Wiretaps. Alternatively, he seeks an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) ("Franks hearing").

## I. Necessity

The Government is prohibited by the wiretapping provisions of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510-2522, from using electronic surveillance unless specific circumstances exist, including the showing of necessity. See 18 U.S.C. § 2518(1). In order to establish that a wiretap is necessary, the wiretap application must provide "a full and

6

complete statement as to whether or not other investigative
procedures have been tried and failed or why they reasonably
appear to be unlikely to succeed if tried or to be too
dangerous." § 2518(1)(c).  The judge issuing the wiretap must
then determine whether "normal investigative procedures have been
tried and have failed or reasonably appear to be unlikely to
succeed if tried or to be too dangerous." § 2518(3)(c).  These
procedural steps "require strict adherence" and "utmost scrutiny
must be exercised to determine whether wiretap orders conform to
Title III." United States v. Blackmon, 273 F.3d 1204, 1207 (9th
Cir. 2001) (citations and quotation marks omitted).  However,
"the necessity requirement should not be interpreted to require
law enforcement to exhaust every possible technique before
resorting to wiretapping, but to ensure that in the usual case
wiretapping is not used as the first meaningful step in an
investigation." United States v. Gonzalez, Inc., 412 F.3d 1102,
1113 (9th Cir. 2005) (citations omitted), *amended on denial of
rehearing*, 437 F.3d 854 (9th Cir. 2006).

        Bouey disputes that the Wiretaps were necessary.  He
argues that the Government had traditional investigative methods
that it had used with success, and continued use of these methods
was sufficient.  Additionally, he challenges the veracity of the
Sze Affidavit submitted in support of the initial application,
and argues it contained material misstatements and omissions

regarding: (1) physical surveillance; (2) vehicle trackers;
(3) confidential informants/undercover agents; (4) grand
jury/investigative interviews; (5) grand jury/business and
banking records; (6) search warrants; and (7) telephone
subscriber/toll analysis and pen register analysis.  Also, he
contends that the Sze Affidavit overall is misleading in that it
incorporates boilerplate conclusions that speak in generalities
and do not address the specifics of this individual case.  For
these reasons, Bouey asserts that all evidence obtained as a
result of the Wiretaps must be suppressed.

### A.   Physical Surveillance

        Bouey argues that physical surveillance was sufficient
because: (1) Christie and others in the THC Ministry were open
about their use of marijuana because they believed their use to
be for religious purposes and thus legal; (2) counter-
surveillance activities alleged in the Sze Affidavit were
consistent with normal behavior and were not suspicious; and
(3) the pole camera installed outside of the THC Ministry was
sufficient to identify people who may be involved in the alleged
drug trafficking organization.  In addition, he argues that the
Sze Affidavit is fatally flawed because Sze omitted information
about Christie that was obtained from captured video taken by the
pole camera in the five months preceding the initial application
for the Wiretaps.

While Christie may have had an open attitude about his marijuana advocacy, the evidence submitted does not support that he was equally transparent about the identities of his marijuana suppliers and methods of supply.  While it undisputed that law enforcement engaged in extensive physical surveillance of both Christie and the THC Ministry, and observed persons appearing to deliver suspected marijuana plants, [Sze Aff. at ¶ 95,] mere physical observation has its limits.  Information such as the identities of suppliers, their intent, what was inside the boxes brought into the THC Ministry, and so forth, cannot be obtained from physical surveillance and video captured by the pole camera. "The necessity for the wiretap is evaluated in light of the government's need not merely to collect some evidence, but to 'develop an effective case against those involved in the conspiracy.'"  United States v. Decoud, 456 F.3d 996, 1007 (9th Cir. 2006) (some citations omitted) (quoting United States v. Brone, 792 F.2d 1504, 1506 (9th Cir. 1986)).

As to Bouey's argument that the application for the Wiretaps failed to provide any information about Christie obtained from video captured by the pole camera, as previously stated, this information would not be sufficient to develop an effective case.  Therefore the Government's showing of necessity is unaffected by any omission of it from the Sze Affidavit.

9

**B.**   **Vehicle Trackers**

Bouey argues that the Government could have used vehicle trackers to find out the identities of Christie's suppliers but misrepresented in its wiretap application that using vehicle trackers was impractical because: (1) it was impossible to distinguish between Christie's suppliers and the customers; (2) his suppliers departed immediately after bringing marijuana to the THC Ministry; and (3) Hilo was comprised of "large rural and agricultural areas" that render trackers ineffective. [Sze Aff. at ¶ 137.] Bouey submits that these misrepresentations are belied by the fact that the Government's physical surveillance had already identified at least one suspected supplier's identity (William Canfield), whose vehicle could have been followed by vehicle tracker, as the Government did for Bouey's car. Bouey also argues that the Government could have used vehicle trackers in conjunction with additional surveillance, such as by helicopter, to cover the large rural areas and to pinpoint the locations of marijuana cultivation. Bouey's arguments overlook the fact that physical surveillance provided limited results – that is, the identity of only one suspected supplier. While a vehicle tracker could have been employed for this one possible suspect, the Government established that vehicle tracking was unlikely to succeed in leading to information about the THC Ministry's multiple

10

suppliers for the significant amounts of marijuana that were
apparently being distributed.

   C.   **Confidential Informants/Undercover Agents**

        Bouey contends that the Sze Affidavit contains numerous
misrepresentations and omissions regarding the confidential
informants and undercover agents because it is rife with
"boilerplate conclusions, which are contradicted by the specific
circumstances of this case." [Mem. in Supp. of Motion to
Suppress at 23 (citation omitted).] Bouey identifies these as:
(1) stating that drug traffickers remove themselves from direct
contact with strangers and drugs when the facts of this case
demonstrate that the THC Ministry welcomed strangers because they
focused on recruiting new members, and Christie never distanced
himself from marijuana because he frequently distributed it to
members as cannabis sacrament; (2) stating that Christie keeps
his customers and suppliers insulated from each other, when
Christie said in his conversations that he needed a large supply
of marijuana for his members; and (3) omitting that Christie
openly told the Confidential Source and law enforcement about the
THC Ministry's use of marijuana so that "law enforcement
discovered virtually everything about Christie and the Ministry
except the identities of all of his sources of supply." [Id. at
23-25 (citing Sze Aff. at ¶¶ 2, 37-93, 96-100, 102-09, 116-27,
139, 141).] Christie may have been open about his marijuana

11

advocacy and use but, as Bouey admits, Christie did not disclose to the undercover agents and the Confidential Source the information for which the Wiretaps were sought:  the identities of his suppliers and their sources.  Thus, the Government demonstrated that these conventional investigation techniques had failed.

To the extent that the Sze Affidavit contained "boilerplate conclusions" that were not applicable to Christie and the THC Ministry, these statements are superfluous and do not detract from the Government's showing of necessity.

D.    **Grand Jury/Investigative Interviews**

Bouey's contention that Christie and the THC Ministry were open about their use of marijuana and their activities, and therefore would have been equally as candid if the law enforcement had sought grand jury or investigative interviews and would not have refused to provide information about drug trafficking is unsubstantiated.  Again, although Christie was open about his marijuana advocacy and use, Christie and the TCH Ministry workers were not equally transparent about the identities of marijuana suppliers and methods of supply.  Nor is there any indication that, if subpoenaed, they would candidly cooperate.  Further, once subpoenaed, the investigation would be irrevocably revealed.  These techniques reasonably appear to be unlikely to succeed if tried.

12

**E.** **Grand Jury/Business and Banking Records**

Bouey raises a similar argument that Christie and the THC Ministry openly used marijuana and thus, even if (as asserted in the Sze Affidavit) Hilo's "'tight-knit community'" would have alerted Christie if businesses or banks were served with subpoenas for their records regarding him and the THC Ministry, it would be inconsequential because of Christie's repeated assertions that "neither he nor the Ministry had anything to hide." [Mem. in Supp. of Motion to Suppress at 28-29 (quoting Sze Aff. at ¶ 145).] This argument is unsubstantiated for the reasons set forth regarding grand jury and investigative interviews. As to Bouey's argument that the Sze Affidavit's statement "that the Ministry operates only on a 'cash and carry' business" is suspect, [id. at 28 (quoting Sze Aff. at ¶ 145),] this statement may be erroneous, but it is superfluous and does not negate the Government's showing of necessity.

**F.** **Search Warrants**

Bouey submits that the Sze Affidavit groundlessly states that search warrants could possibly reveal the investigation and place the Confidential Source's life at risk when the circumstances of the case demonstrate that Christie or anyone associated with the THC Ministry has not suggested violence or threatening behavior. [Id. at 29 (citing Sze Aff. at ¶ 146).] While search warrants are invaluable to confiscate

13

drugs as well as documents that may help to identify names and locations of suppliers, it is inescapable that, once executed, the search warrant exposes the investigation itself as well as who is the subject of the investigation.  Once burned, that bridge cannot be crossed again.

Although Christie and his associates had not exhibited any violent or threatening behavior up to that point in the investigation, it was certainly possible that one or more of them might physically confront the Confidential Source if his identity was disclosed.  This conjecture in the Sze Affidavit may be gratuitous or superfluous, but it does not negate the Government's showing of necessity.

### G.   Telephone Subscriber/Toll Analysis and Pen Register Analysis

Bouey has failed to present any factual allegations to substantiate his statements that the telephone subscriber/toll analysis and pen registers were sufficient or likely to succeed in furthering the Government's investigation.  As set forth more fully in the Sze Affidavit, pen registers supply only identifying information regarding calls made from a particular telephone and provide neither the callers' identities nor the contents of the conversations.  [Sze Aff. at ¶¶ 149-50.]  Bouey also takes issue with the Sze Affidavit's statement that, in past investigations where subpoenas were served on pager resellers, employees of the subpoenaed entities have disclosed the subpoenas' existence.

14

Bouey argues that this statement is not applicable to this case because there is no evidence that either Christie or his associates in the THC Ministry ever used pagers.  [Mem. in Supp. of Motion to Suppress at 29-30 (citing Sze Aff. at ¶ 150).] Again, while gratuitous or superfluous, this statement does not affect the Government's showing of necessity.

## II.  *Franks* Hearing

"To obtain a *Franks* hearing, defendants must make a preliminary showing that the wiretap applications contained material misrepresentations or omissions."  Gonzalez, Inc., 412 F.3d at 1110 (citing United States v. Shryock, 342 F.3d 949, 977 (9th Cir. 2003); United States v. Bennett, 219 F.3d 1117, 1124 (9th Cir. 2000)).   The defense is required "to make a substantial showing that supports a finding of intent or recklessness."  Id. at 1111 (citing United States v. Stanert, 762 F.2d 775, 781 (9th Cir. 1985)).[4]  Falsehoods as well as "deliberate or reckless omissions of facts that tend to mislead" can be grounds for a challenge to "a warrant affidavit valid on its face."  Stanert, 762 F.2d at 781.  A misrepresentation or omission is not material if "upon review of [the] application, purged of its misstatements, a reasonable issuing judge would find that the application nonetheless conforms to the

---

[4] Stanert was amended on the denial of the petition for hearing.  769 F.2d 1410 (9th Cir. 1985).  The amendment is not relevant to this Court's analysis.

requirements of §§ 2518(1)(c) and (3)(c)." <u>Blackmon</u>, 273 F.3d at 1209 (citation omitted).

Bouey fails to make "a substantial preliminary showing" that any statements in the wiretap applications were false, let alone knowingly or recklessly so. <u>See</u> <u>Franks</u>, 438 U.S. at 171 ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory . . . . There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.").

Even assuming that the statements complained of are deliberate falsehoods or omissions, Bouey fails to show that they are material ones. This Court has carefully considered each of them and concludes that, while certain statements may be superfluous, gratuitous or irrelevant, these are not material falsehoods or omissions that affect the Government's showing of necessity. Bouey is not, therefore, entitled to a *Franks* hearing, and his request is denied.

<u>CONCLUSION</u>

On the basis of the foregoing, Bouey's Motion to Suppress Evidence, filed December 10, 2012, Christie's joinder in the motion, also filed December 10, 2012, and St. Cyr's joinder in the motion, filed March 1, 2013, are HEREBY DENIED.

IT IS SO ORDERED.

16

DATED AT HONOLULU, HAWAII, April 10, 2014.



 /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

USA V. ROGER CUSICK CHRISTIE, ET AL; CR. NO. 10-00384 LEK; ORDER
DENYING DEFENDANT JOHN DEBAPTIST BOUEY, III'S MOTION TO SUPPRESS
EVIDENCE FILED DECEMBER 10, 2012, DEFENDANT ROGER CUSICK
CHRISTIE'S JOINDER, FILED DECEMBER 10, 2012, AND DEFENDANT
SHERRYANNE L. CHRISTIE'S JOINDER, FILED MARCH 1, 2013